## ERASMUS A. PLIMPTON v. ELLA C. GLEASON & TR.

*Implied Promise. Statute of Limitations. Reference.*

1. An implied promise to pay for the use of an organ cannot be found from the fact of using it, when the organ was left with the defendant with a view of negotiating a sale.
2. Money loaned may be properly charged on book; and, if so charged, and there is an *implied* understanding between the parties that the loan is to be a part of their mutual dealings and to effect the general balance, it is in fact a credit, and has the same effect on the Statute of Limitations as any payment.
3. The question of implied understanding is usually one of mixed law and fact.

ASSUMPSIT. Heard on the report of a referee, September Term, 1884, ROWELL, J., presiding. Judgment for the plaintiff to recover only $3.78, and trustees discharged. Exceptions by the plaintiff.

The referee found, that the organ was left by one Stewart at the house of the defendant's father in July, 1876; that the plaintiff purchased it, and left it with the defendant in the fall of 1876, and took it away in the "fall of 1880 or summer of 1881"; and that $45 was a fair compensation for the use of the organ.

*Martin & Eddy*, for the plaintiff.

On the facts found there is an implied promise to pay for the use of the organ. *Paddock* v. *Kittredge*, 31 Vt. 378; *Ives* v. *Hulet*, 12 Vt. 314; 1 Bl. Com. 443; 1 Kent Com. 450; *James* v. *Bixby*, 11 Mass. 340; *Sumner* v. *Williams*, 8 Mass. 161. The items 2 and 3 of the defendant's account are barred by the Statute of Limitations. 7 Wait Act. & Def. 267; 7 Penn. St. 381; *Clark* v. *Maguire*, 35 Penn. St. 259; 1 C. M. & R. 252; 38 Md. 331; Wood Lim. 594; *Hodge* v. *Hawley*, 25 Vt. 210.

If there was any question about these items being a part of a mutual account, it was one of fact for the referee to settle. This he did; for he finds that the plaintiff never made any promise or acknowledgment relative to either of said items. 1 C. & M. 483; 2 C. B. 476; 6 El. & Bl. 506; *Blair* v. *Drew*, 6 N. H. 235; 7 DeG. M. & G. 229.

*E. L. Waterman*, for the defendant.

The Statute of Limitations is not a bar. The accounts were mutual and unsettled. *Abbott* v. *Keith*, 11 Vt. 525.

Plaintiff was selling goods and charging to defendant, before and after the date of these cash items. The question is, whether these two cash items were kept on foot by charges against defendant by the plaintiff. Plaintiff's specification answers that question. In view of the plaintiff's charges against the defendant, and the fact of his giving her credit for cash items before and after those in dispute, the court was justified in treating them the same as the others, and no error in law appears. Money loaned is proper matter of charge in book account. This was an ordinary cash transaction in mutual deal. *Sargent* v. *Pettibone*, 1 Aik. 355; *Warden* v. *Johnson*, 11 Vt. 455; *Cass* v. *McDonald*, 39 Vt. 65. There was no implied promise to pay for the use of the organ. *Kimball* v. *Baxter*, 27 Vt. 628; *Fuller* v. *Adams*, 44 Vt. 543.

The opinion of the court was delivered by

VEAZEY, J. We do not think the referee has reported a state of facts from which an implied promise to pay for the use of the organ can be fairly found. The organ first went into the possession of the defendant's father, as expressed by the referee, " in order to negotiate a sale of the instrument to her father." The plaintiff and Stewart, the owner, were afterwards informed by the defendant that her father had concluded not to buy the organ. The plaintiff then bought it while in the possession of the defendant's father,

and left it there until he took it away in 1880, after the father died. There is no finding that the original purpose of leaving the organ at the defendant's house was changed.

It would be rather dangerous to hold that where articles are left with persons for trial, or with a view of negotiating a sale, the owner may, after that purpose fails, charge for the use in the meantime.

Other findings as to the friendly relations of the parties, and the use of the organ by the plaintiff's wife as much or more than the defendant used it, and the defendant's understanding that she was not to pay for the use, and the failure to report any counter understanding by the plaintiff, militate strongly against the claim of an implied promise to pay for the use. The law recognizes, as it is expressed in some cases, "a sort of moral estoppel," founded upon the legal maxim, "that no one can take advantage of his own wrong." The acts of the party may be such that the law will raise a promise therefrom, and will exclude evidence of an intention to commit a tort in disavowal of such tacit promise. But in this case the report fails to show any misleading or fraudulent conduct of the defendant.

The plaintiff claims that the Statute of Limitations is a bar to the defendant's items of account 2 and 3, dated in June and October, 1874, more than six years before this suit was brought.

The plaintiff's account had been running for some time prior to 1875, when he made a settlement on his book, carrying the balance due him to a new account containing forty-three items, which constituted the specification of his claim in this case. The defendant's account consisted of items of cash and labor, the cash items being the first five. The referee finds that items 2, 3, and 4 on defendant's specifications were for money loaned by the defendant to the plaintiff at the dates charged; but does not find whether items 1 and 5 were loans or payments on account. Item 4 was within six years prior to this suit. There was no ex-

*press* understanding that any of these cash items were to enter into and become a part of the mutual dealing or account of the parties and to be the subject of future adjustment in ascertaining the general balance due thereon. Was there such an *implied* understanding?

The finding that items 2 and 3 were *loans* excludes the idea that they were to be payments of any particular items of the plaintiff's account. To determine the effect of an item upon the Statute of Limitations, "the true inquiry is, whether the item represents a legal indebtedness that should go into the accounts of the parties, and not whether either party has or has not, in fact, embraced the controverted item in his account." *Davis* v. *Smith*, 48 Vt. 52. There does not appear to have ever been a mutual settlement of accounts between these parties. As before stated, the plaintiff settled his book in 1875, but the defendant had nothing to do with that settlement; therefore it did not merge these items. The defendant's items, 1, 2, and 3 of his account were all prior to that act of the plaintiff; but he only allowed item 1 at that time, and as we understand denies that he had the money specified in 2 and 3. Money loaned is as proper an item of charge on book as labor or merchandise. *Warden* v. *Johnson*, 11 Vt. 455. When money is paid either as a loan or otherwise if the parties treat it as mutual or as other mutual items of material or labor in the account in which it is charged, its legal effect should be the same. The plaintiff was selling and charging goods to the defendant before and after the date of these items. He gave credit for cash before and after those in dispute. He made no promise to pay these loans as independent items of deal. The question of implied understanding is usually one of mixed law and fact. We think this report as a whole shows an *implied* understanding between the parties that these loans were to be a part of their mutual dealing or account and were to affect the general balance due thereon. There was a credit in fact by the mutual

act and consent of both parties, as fairly inferable from their whole deal. This is sufficient to operate as a removal of the statute bar. *Hodge* v. *Manley*, 25 Vt. 210. One proposition of law upon which the plaintiff rests, is, that the payment of money does not make an account *mutual ;* that it only has the effect to create a settlement to the date of payment and a new promise to pay the balance. Conceding this to be sound, it is not controlling in this case as against a course of dealing that shows an implied mutual understanding and recognition as above stated.

Judgment affirmed.