Solomon White and Aaron White, trading as S. White & Co., *v.* Harris Wolf, David Torofsky and Mark Torofsky, trading as Wolf & Co., Appellants.

*Contract—Cancelation of contract.*

Plaintiffs agreed to manufacture and ship certain goods to defendants in lots beginning on a certain day mentioned. Subsequently plaintiffs wrote defendants that on account of a strike they would be obliged to have an extension of time of about forty days to deliver the goods. Defendants wrote first that they could not make any change in the order, and then wrote canceling the order, stating that on account of plaintiffs' inability to deliver the goods they had been obliged to leave them out of their price list, and that under the circumstances the goods would be of no use to them. It appeared that if the shipments had begun on the day designated in the contract it would have taken about four months to complete the deliveries. The notice of the refusal to make the extension was given one month and twenty-one days before the time to which the change was requested to be made. *Held,* that the plaintiffs were not entitled to recover damages from defendants.

Argued Jan. 6, 1898. Appeal, No. 160, Jan. T., 1897, by defendants, from judgment of C. P. No. 4, Phila. Co., March T., 1896, No. 12, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit for an alleged breach of contract. Before ARNOLD, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[I am bound to instruct you, upon the face of the papers, that the defendants were wrong in saying that they canceled the contract, and therefore they subjected themselves to a liability for any loss which their conduct might cause to the plaintiffs. That is the whole of the case in a nutshell, that the defendants have without any authority or justification broken the contract and subjected themselves to a liability for damages, and the only question open for you to determine upon the evidence will be the amount of damages.] [1]

[ I have instructed you upon the writings of the case, as it is my duty to instruct you, that upon those writings the defend-

ants were in error in breaking this contract. That absolved the plaintiffs from any liability to tender any goods after that date or to ship them. It would be a vain thing to tender goods to ·a person who says in advance that he will not take them. The only question for you to determine upon the whole evidence in the case is what is the amount of damages which the plaintiffs suffered under that contract, whether it shall be $2,500, or more, or even less.] [2]

· Verdict and judgment for plaintiff for $3,496.50. Defendants appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*George P. Rich* and *Henry C. Boyer*, for appellants.— A cancelation or rescission of the contract required the consent of both parties ; neither could rescind without the consent of the other. Hence, if the plaintiffs did not want to agree to the cancelation of the contract, all they had to do was to say so, and go on with the execution of the order according to its terms, holding the defendants responsible. The defendants did not refuse to accept and pay for goods delivered according to the original contract, nor did they seek to cancel or rescind this contract if the plaintiffs were able to carry it out.

The cases establish the proposition that a vendor, able and ready to deliver goods which a purchaser has ordered to be manufactured for him, but who has refrained from manufacturing and delivering them in consequence of instructions to that effect from the purchaser, may, on proving these facts, recover the damages which he has sustained by the defendants' unjustifiable breach of his contract; but they are very far from sustaining the proposition laid down by the court below in this case, that a vendor who not only fails to show that he is ready and willing to deliver the goods, but who admits that he was unable to deliver them, may recover damages for the purchaser's refusal to pay for goods which he could not furnish him : Morgan v. Bain, L. R. 10 C. P. Cas. 15 ; Benjamin on Sales (3d. ed.), sec. 1013.

*Julius C. Levi*, for appellees.—It is within the sole province of the court to construe and comment upon the legal effect of written documents introduced in evidence by either party ; and

under the law it is a matter with which the jury have not any concern: Esser v. Linderman, 71 Pa. 76; Bryant v. Hagerty, 87 Pa. 256; Foster v. Berg, 104 Pa. 324; Shafer v. Senseman, 125 Pa. 310.

The learned trial judge's construction of the two letters, as amounting in law only to a request made by plaintiffs to defendants—that the favor of an extension of time be granted to them within which to make said deliveries, and that said two letters not being susceptible of the preposterous construction sought to be placed upon them by defendants, and no further reason being assigned or proved by defendants for their positive determination not to accept said deliveries from defendants under any circumstances, and the further fact appearing that defendants, by letters dated April 4 and April 13, 1895, advised plaintiffs of their fixed and unalterable resolution not to receive said goods, made defendants' breach of contract consummate, and excused plaintiffs from the necessity of making the said deliveries, or from doing any other or further act in performance of their part of the said contract: Cort v. Ry. Co., 79 Eng. Com. Law, 126 ; Benjamin on Sales, sec. 1016 ; Addison on Contracts, 1194; Peck v. United States, 102 U. S. 64; 1 Addison on Contracts, 15; Corning v. Colt, 5 Wend. 253; Larkins's App., 38 Pa. 457.

OPINION BY MR. JUSTICE GREEN, April 11, 1898:

The plaintiffs in this case were manufacturers of clothing in Philadelphia, and on March 13, 1895, they made a contract with the defendants, doing business in Chicago, to make and deliver to them one thousand dozens of pantaloons. The contract was in writing signed by both parties and contained the following stipulation: "Shipments of the above to commence 100 doz. Apr. 15th, to 20 by T. D. and to continue 50 doz. weekly until order is completed. Unless otherwise instructed by H. Wolf & Co."

On March 27, 1895, the plaintiffs wrote to the defendants the following letter:

"3 BANK STREET, PHILADELPHIA, 3/27th, 1895.
"J. JERUFSKY with H. WOLF & CO.

"Dear Sir: Yours dated the 22d too hand your request will be fulfilled we beg to say that we are obliged to have an extention until May 25, if convenient too do so sooner will do our

utmost as we are unable to employ the necessary hands required for your work not only ourselfs but all others are also short of hands on a/c of strikes; will try our best too ship you some the end of April; our friend Mr. Armitage will call on you tomorrow & he will explain too you how much trouble we have too obtain hands, therefore we request you to send us the extention for May 25 awaiting same we are

                                        " S. WHITE & Co."

On April 1st the plaintiffs wrote the following letter:

                "3 BANK STREET, PHILADELPHIA, 4/1, 1895.
"Mr. JERUFSKY, with H. WOLF & Co.

"Dear Sir : Have seen Mr. Armitage since he returned from New York and he informed me that you would reply to my letter; please let me hear from you before we go on further with your order.

"Awaiting your prompt reply we are
                                        " Respt.
                                        "S. WHITE & Co."

In reply to these two letters the following letters were written by the representative of the defendants:

"A. H. T.                           CHICAGO, N. Y., 4/2/95.
"Mess. S. WHITE & Co.,
     "No. 3 BANK ST., PHILADELPHIA, PA.

"Gentlemen: We referred your letter of 3/27 to our Chicago house and they will answer direct according; as I personally cannot make any alterations as per order placed with you. And we certainly expect same to be carried out as per contract unless our Chicago house instructs you otherwise.

                "Respectfully yours,
                                        " A. H. TOROFSKY."

"A. H. T.                           CHICAGO, N. Y., 4/4/95.
"Messrs. S. WHITE & Co., PHILADELPHIA, PA.

"I received instructions from our Chicago house to-day as per your letter of the 27th. ult to cancel the entire pants order placed with you as the deliveries you mention do not prove satisfactory and it will be too late in the season for us. Please act according and oblige.

                "Yours respectfully,
                                        " A. H. TOROFSKY."

In addition to the foregoing the defendants wrote directly to the plaintiffs as follows :

"April 13th, /95.

" Messrs. S. WHITE & CO.,

   " 3 BANK ST., PHILADELPHIA, PA.

" Gentlemen : In reply to your communication of the 27th ult. addressed to our New York office, would say that we regret being compelled to insist upon your accepting our cancellation for order of March 13th.

" Your inability to complete the contract under agreed specified dates has greatly inconvenienced us, inasmuch as we were about to list the goods as a profitable item in our catalogue and were compelled to leave them out on account of your inability to deliver.   We do not now wish to be put to the further inconvenience of receiving a lot of merchandize that we cannot sell because we could not advertise them.   It was simply for the reason that our catalogue was about to go to press and we wanted the goods within a specified time that we insisted upon a positive agreement as to delivery dates.   We trust you will not blame us for not wishing to receive a lot of merchandise which is of no use to us and will not be delivered on time through no fault of our own.

                    " Yours respectfully,

                              " H. WOLF & COMPANY."

In the foregoing state of the testimony the learned court below charged the jury that " the defendants have without any authority or justification broken the contract and subjected themselves to a liability for damages, and the only question open for you to determine upon the evidence will be the amount of damages."   We find ourselves unable to agree to this view of the case, and for reasons which seem to us to be unanswerable.   We think it quite clear that by the explicit terms of the contract the plaintiffs were bound to commence the deliveries of the goods by shipping one hundred dozens of the pants during the period from April 15 to 20.   This was to be followed by further weekly shipments immediately thereafter of fifty dozens each until the whole quantity was delivered.   It would have required all the time from April 15 to August 24 to have completed these deliveries.

When on March 27 the plaintiffs wrote to the defendants saying "we are obliged to have an extension until May 25," and "therefore we request you to send us the extension for May 25," and alleged as a reason for asking the extension that they were "unable to employ the necessary hands required for your work," they were not asserting any right under the contract but were asking for a change in its terms, upon what might be a most vital matter to the defendants. If an extension to May 25 was granted the deliveries would not be completed until the latter part of September. How important this proposed change in the time of the delivery was to the defendants, they subsequently expressed in their letter of April 13 to the plaintiffs. They there say : "Your inability to complete the contract under agreed specified dates has greatly inconvenienced us, inasmuch as we were about to list the goods as a profitable item in our catalogue, and were compelled to leave them out on account of your inability to deliver. We do not now wish to be put to the further inconvenience of receiving a lot of merchandize that we cannot sell because we could not advertise them. It was simply for the reason that our catalogue was about to go to press and we wanted the goods within a specified time, that we insisted upon a positive agreement as to delivery dates. We trust you will not blame us for not wishing to receive a lot of merchandize which is of no use to us and that will not be delivered on time through no fault of our own."

It seems to us that the foregoing is a very satisfactory explanation of the defendants' refusal to accede to the plaintiffs' request to a change of the contract as to the time of delivery. They were under no obligation to consent to the change ; they had a right to stand on their contract, and if the plaintiffs failed to commence their deliveries according to the contract they had a perfect right to refuse to receive them. In point of fact the plaintiffs did not deliver nor did they offer to deliver the goods at the time fixed by the contract. We know of no reason why the defendants should be held liable in damages for declining to agree to the proposed change in the contract. Unless they were in technical legal default for refusing to make the change there could be no such liability. But it is very clear to us that they were in no default for declining to agree to the change, and surely they could not be held to be in default for giving

notice that they would not so agree.  They had a right to take the plaintiffs at their word when they said they were obliged to have an extension and gave as a reason that they were unable to employ the necessary hands.  The reply of the defendants was promptly made and it was emphatic.  Being made on April 4, it was one month and twenty-one days before the time to which the change was requested to be made.  It is difficult to understand how the plaintiffs could have suffered any damage when the notice of refusal to make the change was given at so early a period.  But whether damage was sustained or not it was not through any fault of the defendants, and they cannot in fairness be held responsible.  We think the learned court below unwittingly fell into error in holding that before the defendants could decline to agree to the proposed change in the contract, the letter of the plaintiffs must have contained also the statement of the plaintiffs that unless the extension was granted they could not comply with the order and would not attempt to do it.  We do not understand that there is any such rule of law, and we are not referred to any authority for such a proposition, nor have we been able to find any.  There is no question of technical cancelation requiring the consent of both parties involved in the case.  In using the word " cancel " in their letter of April 4 and the word "cancelation " in their letter of April 13, the defendants were merely expressing their refusal to consent to the proposed change and their decision not to be further bound by the contract, and that, as we have seen, they had a right to do.  Entertaining these views we are obliged to sustain the assignments of error.

Judgment reversed and judgment now entered for the defendants with costs.