ROMAN WOLFERT, Respondent, *v.* CALEDONIA SPRINGS ICE COMPANY, Appellant.

Sale — indivisible contract to deliver goods in installments — what constitutes breach thereof — what constitutes bar to an action for a breach.

In a contract for the sale of goods to be delivered in installments, a failure of the seller to deliver, or of the buyer to accept one install-ment, constitutes such a breach of the contract as will give the party not in default the right to rescind the entire contract and sue for his damages without waiting until the expiration of the term fixed for the completion of the contract.

The receipt of personal property in part performance of an executory contract is not a bar to a subsequent claim that the contract has been rescinded, when the amount received is a divisible or installment part of the contract and it is complete in itself, but when a part only of the installment is tendered and there is then a refusal to deliver all of the installment, a person cannot accept such part performance of the con-tract and at the same time claim a rescission of the entire contract.

Plaintiff and defendant entered into a contract by which the latter agreed to sell and the former to purchase a certain amount of ice to be deliv-ered between March 15, 1906, and January 1, 1907, at a specified place, "and in such quantity and at such times daily," as plaintiff might desire. The contract was fully complied with by both parties until July,

when the defendant failed on several occasions to furnish the quantity demanded by plaintiff. On July twenty-fourth plaintiff desired several tons of ice. The defendant did not supply the whole amount but tendered part of it, which the plaintiff accepted. After that date plaintiff made no further demand for ice, and subsequently commenced an action in which he alleged that the defendant had broken its agreement, and demanded damages for the breach of contract and the alleged consequential ruin of his business. *Held*, that the action cannot be maintained; that, having accepted part of the installment of ice demanded on July twenty-fourth, it was plaintiff's duty to thereafter make a further demand upon the defendant before he could rescind the contract.
*Wolfert* v. *Caledonia Springs Ice Co.*, 123 App. Div. 915, reversed.

(Argued March 19, 1909; decided March 30, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 31, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George D. Reed* for appellant. Plaintiff cannot recover upon a breach of the contract because he accepted the ice delivered each day and paid for it and his right to complain does not survive acceptance and payment. (*Hargous* v. *Stone*, 5 N. Y. 86; *C. I. Co.* v. *Pope*, 108 N. Y. 236; *Weil* v. *W. E. D.*, 39 Misc. Rep. 529; *Crane Co.* v. *Collins*, 103 App. Div. 480; *Tompkins* v. *Lamb*, 121 App. Div. 366; *Flanagan* v. *Demarest*, 3 Robt. 173; *Reed* v. *Randell*, 29 N. Y. 373; *O'Donohue* v. *Leggett*, 8 N. Y. Supp. 426; *Avery* v. *Wilson*, 81 N. Y. 344; *Talmage* v. *White*, 3 J. & S. 222.) Plaintiff does not allege or prove facts sufficient to warrant a rescission of the whole contract. A recovery for damages for non-delivery of all future deliveries after July twenty-fourth is erroneous. (*M. E. W. Co.* v. *M. Ry. Co.*, 14 Abb. [N. C.] 129; *Cobb* v. *Hatfield*, 46 N. Y. 533; *Cox* v. *Stokes*, 156 N. Y. 507; *Cahen* v. *Platt*, 69 N. Y. 348; *Brady* v. *Cassidy*, 9 Misc. Rep. 107; 145 N. Y. 171.) The contract is severable,

and defendant is liable only for each breach as it occurs. (*Tipton* v. *Feitner*, 20 N. Y. 425 ; *De Kay* v. *Bliss*, 120 N. Y. 91 ; *McLaughlin* v. *Hess*, 164 Penn. St. 570 ; *Tenny* v. *Mulvaney*, 8 Ore. 129 ; *M. F. Co.* v. *Laurentz*, 44 Md. 218 ; *Mixers* v. *Williams*, 17 Vt. 457 ; *Delafield* v. *Armsby*, 58 App. Div. 435 ; 62 App. Div. 265 ; *O' Gara* v. *Ellsworth*, 85 App. Div. 220 ; Tiedeman on Sales, 335 ; *Saxe* v. *P. L. Co.*, 159 N. Y. 371.)

*Arthur Warren* and *D. Curtis Gano* for respondent. The contract in question is an entire contract for the delivery of 1,222 tons of ice. The fact that the ice was deliverable and the purchase money payable at different times in the future does not deprive the contract of the character of entirety or make it other than a single one in respect to all the ice embraced within its terms. (*Pakas* v. *Hollingshead*, 184 N. Y. 211 ; *Pope* v. *Porter*, 102 N. Y. 366 ; *Norrington* v. *Wright*, 115 U. S. 188 ; *Catlin* v. *Tobias*, 26 N. Y. 217 ; *Butler* v. *Butler*, 77 N. Y. 552 ; *Mount* v. *Lyon*, 49 N. Y. 552 ; *Husted* v. *Craig*, 36 N. Y. 221 ; *Baker* v. *Higgins*, 21 N. Y. 397 ; *Brewster* v. *Pawson*, 32 App. Div. 632.) The failure to deliver one installment under an entire contract is sufficient to constitute a breach of that contract. (*T. E. W. Co.* v. *Martin*, 5 Daly, 417 ; 24 Am. & Eng. Ency. of Law, 1083 ; *Catlin* v. *Tobias*, 26 N. Y. 217 ; *Pakas* v. *Hollingshead*, 184 N. Y. 211 ; *Nichols* v. *S. S. Co.*, 137 N. Y. 471 ; *Cahen* v. *Platt*, 69 N. Y. 348.) The acceptance by plaintiff of a part of the quantity of ice required on July 24, 1906, was not a waiver on the part of the plaintiff of full performance of the contract on the part of the defendant. (*Champlin* v. *Rowley*, 15 Wend. 258 ; 18 Wend. 187 ; *Smith* v. *Brady*, 17 N. Y. 173 ; *Catlin* v. *Tobias*, 26 N. Y. 217 ; *Nightingale* v. *Eisman*, 121 N. Y. 288 ; *Paige* v. *Ott*, 5 Den. 406 ; *Riendeau* v. *Bullock*, 147 N. Y. 269.) Acceptance of less than a whole performance under a contract may take place under such circumstances as to make the acceptor liable for the amount accepted without impairing its cause of action

for the breach of the contract. (*Avery* v. *Wilson*, 81 N. Y. 341; *Silberman* v. *Fretz*, 12 App. Div. 328.)

CHASE, J.   On the 15th day of March, 1906, the plaintiff was a retail dealer in ice at Rochester, N. Y., and the defendant a wholesale dealer in ice, having its houses in which the ice was stored about five miles from said city.   On that day they entered into a contract by which the defendant agreed to sell, and the plaintiff to purchase, 1,222 tons of ice to be delivered "Between this day (the date of the contract) and the first day of January, 1907, at their (defendant's) yards, 205 Troup street, Rochester, N. Y., in such quantity and at such times daily as the party of the second part (plaintiff) may desire for his trade."

The contract contained a provision authorizing the defendant to cancel its agreement in case of its being disabled from furnishing any ice for the trade, and it also contained a provision as follows : " It is further agreed by and between the parties hereunto that in case the ice harvested the past winter should shrink more than anticipated so that the party of the first part will be unable to supply the amount of ice specified in the contract, the party of the second part will pay the increased price that it will cost to get ice in from out of town."

The defendant delivered ice in cars which were filled at said icehouses and transported to said city yards as required from time to time to carry out the contracts made by it.   It had difficulty in furnishing a sufficient quantity of ice for its customers during the latter part of July, 1906, but it did not cancel said contract nor attempt to get ice " from out of town " at an increased price to the plaintiff and others.   At that time the defendant had exhausted the ice housed by it during the preceding winter and it was then attempting to get from its houses a quantity of ice that had been in said houses for three years and which had become frozen into a solid mass. It was very difficult to remove such ice from the houses and retain it in shapely pieces.   On the evening of July 24 there

was a meeting of persons who had contracted with the defendant for ice to determine what course should be pursued by the defendant with its customers, to which meeting the plaintiff was invited, but he did not attend. The market price of ice at that time had become more than double the price named in said contract. On Saturday, July 21, the plaintiff did not receive any ice from the defendant. On Monday, July 23, he received 4,700 pounds and on Tuesday, July 24, 2,400 pounds. The plaintiff claims that on the days mentioned he desired for his trade several tons of ice each day. This action was thereafter commenced and the plaintiff alleges in his complaint a demand on July 14 and on the days mentioned for the amount of ice that he desired for his trade on said days respectively, and he also alleges that the defendant refused to supply him with the ice so desired other than the amounts specified, and he also further alleges that the defendant arbitrarily and willfully broke its agreement in not supplying ice as stated, and he demands damages for the breach of the contract and for the alleged consequential ruin of his retail ice business.

The defendant denies the material allegations of the complaint other than the making and delivery of the contract. The plaintiff does not claim to have made a demand upon the defendant for ice after July 24. There can be no claim that the contract was rescinded by the plaintiff prior to July 24, because from time to time to and including July 24 he accepted ice from the defendant under the contract. The occurrences of July 24 are, therefore, controlling in determining whether the contract was canceled by the plaintiff. The plaintiff's evidence relating thereto is substantially confined to his own testimony and to that of his brother who was the manager of his ice business.

Referring to July 24, the plaintiff testified : " I tried to get information as to whether there was ice there for my own satisfaction.    *    *    *    I did call up on the 24th at various times during the day. The first was somewhere near ten o'clock. I asked if they had ice. They replied no. They said nothing more at that time that I remember. In the

morning I don't think I asked when they would have it. I called up four or five times and I think I called once more before dinner. I don't remember if I asked when they would have ice at the first time. Question : Did you ask if they would get you some ice if they hadn't any ? Answer : I don't know whether I asked that particular question. * * * The next time I asked if they had ice they said they expected some in. I did not ask them to go out and get me ice at any other place. I think that was the last time I asked for ice personally, about three o'clock."

So far, therefore, as the plaintiff personally testified upon the trial it appears that there was delay in getting ice on the 24th of July, but that ice was expected at the yards and that the defendant or some one representing it so notified the plaintiff. There was no demand for ice made upon the defendant by the plaintiff personally on July 24.

The plaintiff's brother, referring to the 24th of July, testified : " I went to the company's place of business on the 24th early in the morning. I obtained no ice at that time. I saw several of the dealers there that morning, and the yard man, Prince. I, among others, had a conversation with him that morning. I asked Prince for ice, and he said there wasn't any. * * * At that time I asked Mr. Prince if he could give me any information as to what time we could get ice. He said he expected some — he had some trouble with his help and couldn't tell when it would be in. I saw him again that day in the afternoon about five o'clock somewhere. I went there at that time with the wagon for ice. The conversation I had with him then was nothing more than that I got ice that I could use to peddle. I think it amounted to 2,400 pounds that I got at that time. Oh, no ! that was not all I required at that time. There wasn't anything said by Prince as to the quantity I received at that time. I knew what quantity I could receive. We were simply told to go to a car and get our ice, and we got what there was. Prince directed me to go to a car for ice that afternoon. I went to the car he directed me to. I found ice there that was fit for me to

peddle to the weight I drew about 2,400. That was all the ice there was there that was fit to peddle."

On the cross-examination he testified : " On the 24th I went there after ice early in the morning between five and six. There was no ice there at that time that I could have. * * * I went back there at five o'clock in the afternoon and found some ice there. I can't say there were over thirty tons of ice in the yard at that time. It is quite a large yard. * * * I say I only got 2,400 and couldn't get any more merchantable ice. I was informed that this was all the ice and when I protested as to the quantity Prince said that is all there is.· I did not mean to say that there was no more. I did not see others getting ice after me. I will not swear that there was not over twenty-four tons of ice in that yard at the time. I did not go back on the 25th or 26th for ice. I never went back for ice. * * * To my knowledge I made no complaint as to the quality of the ice * * *. I could not make a demand for any more ice of Prince at that time. I didn't go back for any more ice.· I have never asked for any ice since then."

The contract does not provide for the delivery of the ice at a particular hour of the day and it further appears that ice was received by the defendant at the yards from time to time and that it was delivered as late as nine or ten o'clock or even midnight.

The plaintiff was delayed and annoyed on the days in question by reason of the failure of the defendant to have ice for delivery at the particular times during such days when he called for it.

The recovery in this action is not for some special and incidental damage to the plaintiff, but it is based upon a rescission of the entire contract. The rules of law applicable to an executory contract for the sale of goods to be delivered in installments are well settled. The plaintiff was entitled under the contract to ice at the defendant's yard in the city of Rochester from day to day in such quantities as desired by him for his trade, In a contract for the sale of goods to be delivered

in installments, a failure of the seller to deliver, or of the buyer to accept one installment, constitutes such a breach of the contract as will give the party not in default the right to rescind the entire contract. (*Pakas* v. *Hollingshead*, 184 N. Y. 211; *Pope* v. *Porter*, 102 N. Y. 366; *Norrington* v. *Wright*, 115 U. S. 188.)

A substantial failure on the part of the defendant to perform its contract by delivering the ice as desired by the plaintiff on July 24 would, therefore, give to the plaintiff the right to rescind the contract as an entirety and sue for his damages without waiting until the first day of January, 1907. It is also settled in this state that where goods are to be delivered in installments under an executory contract, an acceptance of certain installments thereunder does not prevent a rescission of the contract in case of failure thereafter to perform in accordance with the terms of such contract. (*Cahen* v. *Platt*, 69 N. Y. 348; *Pierson* v. *Crooks*, 115 N. Y. 539.)

The evidence in this case does not disclose any formal demand for ice by the plaintiff and a refusal to deliver the same by the defendant. The plaintiff is compelled, on the evidence before us, to take one of two positions: *First*, that he received 2,400 pounds of ice on the 24th of July knowing that he could not obtain any more ice of the defendant on that day; or, *second*, that he received the 2,400 pounds of ice under the contract assuming that the defendant would furnish such further quantity of ice on that day as was desired by him in his trade. If he stands upon the first position and insists that the plaintiff refused to furnish the quantity of ice desired by him in his trade on that day, he is placed in the antagonistic position of accepting the 2,400 pounds of ice under the contract and at the same time repudiating the contract.

The receipt of personal property in part performance of an executory contract is not a bar to a subsequent claim that the contract has been rescinded when the amount received is a divisible or installment part of the contract and it is complete

126 People ex rel. Wineburgh Adv. Co. *v.* Murphy. [Mar.,

Statement of case. [Vol. 195.

in itself, but when a part only of the installment is tendered and there is then a refusal to deliver all of the installment a person cannot accept such part performance of the contract and at the same time claim a rescission of the entire contract. If the plaintiff stands upon the second proposition, that he received the 2,400 pounds of ice assuming that further amounts of ice would be delivered by the defendant on that day sufficient to meet the wants of his trade, then it was his duty to thereafter make a further demand upon the defendant for ice before he could rescind the contract. This he did not do.

The judgment should be reversed and a new trial granted, with costs to abide event.

Cullen, Ch. J., Haight, Vann, Werner, Willard Bartlett and Hiscock, JJ., concur.

Judgment reversed, etc.