AUER & TWITCHELL v. ROBERTSON PAPER COMPANY.

May Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 9, 1920.

*Defences to Suit by Assignee of Contract in His Own Name—
Operation of Breach of Entire Contract—Contract for Sale
of Goods Entire Though Deliveries and Payments Are in
Installments—Failure to Pay Installment Breach of Entire
Contract—Seller's Right to Rescind—Right to Withhold
Installment Payments to Force Further Deliveries—Accept-
ance of Order by Conduct—Personal Liability of Assignee
of Contract for Breach Thereof—Immaterial Variance Not
Raised Below Not Considered—Refusal of Seller to Deliver
Goods—Buyer's Damages—Loss of Profits—Breach of Con-
tract by Seller Not Justified by Buyer's Breach of Another
—Refusal to Make First Installment Delivery Breach of En-
tire Contract—Buyer's Right to Rescind.*

1. A suit in its own name, under G. L. 1800, by the assignee of a
   contract to manufacture and sell, to recover the price of goods
   delivered thereunder by the assignor, is subject to a claim in
   offset for damages resulting from a breach of the contract by
   the assignor.

2. If a contract is entire, it is only such a breach thereof as goes
   to its essence that defeats recovery or relieves the other party
   from performance.

3. A contract to deliver goods in installments to be paid for in in-
   stallments may be entire in its general features, and yet par-
   take of a severable character as to time of delivery and pay-
   ment.

4. In a contract for the sale of goods to be delivered in installments
   and paid for in corresponding installments, default in pay-
   ment of an installment, not justified by the circumstances nor
   waived by the seller, goes to the essence of the contract and
   justifies the seller in rescinding the unexecuted portion thereof
   and refusing to make further deliveries.

5. In such case, the right of the seller to rescind the contract and refuse further deliveries because of the buyer's refusal to pay an overdue installment of the price, is not affected by the fact that the refusal is coupled with an offer to pay when promised deliveries were made.

6. A common-law rule of contract cannot be changed except by statute.

7. The acceptance of a proposal need not be expressed to ripen into a contract, but may be communicated by conduct.

8. Where the acceptance of an order for goods is to be implied from the correspondence of the parties and the conduct of the accepter as evidenced thereby, the question is a mixed question of law and fact.

9. The Supreme Court, on review, is bound to give force to a finding of the trial court involving a mixed question of law and fact.

10. Where the assignee of a contract promised the other party to perform the same, its liability for a breach thereafter was not as assignee, but was direct and personal.

11. The provisions of G. L. 2263, that questions of variance between the pleadings and the evidence cannot be heard in Supreme Court when it does not appear from the exceptions that the question was raised and passed upon by the court below, nor that such variance is material and substantial, affecting the right of the matter, apply as well when the point is made to sustain the judgment below as when relied upon to secure a reversal.

12. Where a contract is wrongfully terminated, the injured party is entitled to recover as damages the profits he would have received by its performance.

13. The measure of the buyer's damages for a breach of contract for the sale of goods by the seller's refusal to make deliveries is the value of the contract to the buyer at the time of the breach; that is, the difference between the contract price and the market price of the goods at such time.

14. Where there were two separate contracts for the sale of paper, the breach of the first contract, by the defendant refusing to pay installments thereunder until further deliveries were made, did not justify the plaintiff in refusing to perform the other until such installments were paid.

15. The last contract being entire, though contemplating deliveries by installments, the plaintiff's refusal to deliver the first

installment was a breach of the whole contract, and entitled the defendant to repudiate the whole and recover damages for the breach.

ACTION OF CONTRACT to recover for two invoices of paper. Pleas, the general issue, offset, and declaration in offset. Trial by Court at the September Term, 1919, Windham County, *Wilson*, J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Barber, Barber & Miller* and *W. B. C. Stickney* for the defendant.

*A. F. Schwenk* and *W. R. Daley* for the plaintiff.

TAYLOR, J. The plaintiff is a corporation organized in March, 1916. It succeeded to the entire business of a copartnership of the same name, who, at the time the contracts in question were made, were jobbers handling paper located at Philadelphia, Pennsylvania. The corporation brings this suit as assignee of the copartnership. The complaint is in contract for the recovery of two invoices of paper delivered to the defendant in February, 1916, in part performance of an accepted order placed by the defendant with the copartnership on September 29, 1915. No question is made but that the defendant had the paper and has not paid for it. The defence is based upon a complaint in offset alleging breach of two ·separate contracts, one based upon the order of September 29 and the other upon an order dated December 20, 1915. On the facts found by the court judgment was entered for the plaintiff for its entire demand, and the defendant's claims in offset were disallowed. The defendant excepted to the judgment as contrary to and not supported by the findings; so the only questions for review are whether on the findings the defendant's claims in offset, either or both, should have been allowed. The findings respecting these claims are such that they can best be considered separately.

The order of September 29, 1915, was for a total of 9,000 pounds of white Glassine paper of certain specified sizes, to be filled promptly at a price of ten cents per pound, delivered at Bellows Falls, terms "3%—30 days." It was accepted unqualifiedly by letter under date of October 1, 1915. The paper

sued for was covered by two invoices, one dated February 10, 1916, and the other February 23, 1916. The court found the two invoices to have been overdue after thirty days from their respective dates. Other shipments had previously been made under this contract, which were paid for within the thirty days allowed for taking the discount. Both orders were for Glassine paper to be manufactured and delivered in the future, and not what is known as stock paper, or paper already manufactured, which could be delivered at once. The correspondence, which is referred to and made part of the findings, shows that the defendant was insistent and persisted in its demands for deliveries under both orders; plaintiff's assignors all the time protesting that they were doing their best to fill the orders. The court finds that the shipments were greatly delayed owing to conditions of which both parties had knowledge at the time the order was placed, and that the shipments that were made on the September order were made within a reasonable time in view of these conditions. Under date of April 24, 1916, the plaintiff wrote the defendant a letter requesting payment of the two invoices. On April 27 it renewed the request, with an intimation that further shipments of paper would not be made until a remittance covering the February invoices was received. The defendant replied inquiring further about shipments and agreeing to remit for the February invoices, if advised that a promised shipment had been made. The plaintiff's answer was a refusal to ship paper claimed to be ready for shipment until the remittance was received, and the defendant's reply a refusal to pay until further delivery was made on the September order.

At the trial the plaintiff insisted that further shipments under both orders were rightfully withheld because the defendant had broken the contract by refusing payment, while the defendant insisted that the plaintiff's refusal to make further deliveries was a breach of the contract entitling the defendant to damages under its complaint in offset. In respect to the terms of payment the court found that the understanding of the parties was that each invoice was to be paid for separately according to the terms of the order, and so far as it was a matter of fact that such was the contract between them, and that the two invoices were "due and unpaid" thirty days from their respective dates. On the record before us it is to be taken that by the terms of the contract payment of each separate invoice was to be made on

or before thirty days from its date. The terms, "3%—30 days," are in effect so construed by the trial court, presumably on evidence before it to show that such was its meaning as a trade term. There is no exception to the "finding" as a finding of fact, and the parties appear to have been content with the conclusion reached by the court in that respect.

[1] The claim is made by the plaintiff that the breach of contract, if any, for which the defendant is seeking to recover damages was committed by the copartnership, and so the claim in offset was properly disallowed against the plaintiff. It is argued that, in the absence of any agreement between the parties to the suit respecting liability, the assignment of the rights of the copartners under the contract did not make the plaintiff corporation liable to the defendant for breaches committed before the assignment was made. This claim is untenable. If, as the plaintiff assumes, the alleged breach was by the corpartnership, it does not follow that the resulting damages could not be offset in this action. The plaintiff relies upon *Smith* v. *Kellogg et al.*, 46 Vt. 560, wherein it is held that the action for a breach of a mere personal contract cannot be brought against the party to whom the contracting party has assigned his interest, but must be brought against the original contracting party. The contract in that case was a lease by Smith of a drug store and personal property, including a soda fountain, to Kellogg and one Lowry. During the term the lessees disposed of the fountain, which was a breach of the lease, and afterwards Lowry assigned his interest in the lease to a third party who was made defendant with Kellogg in the suit subsequently brought by Smith to recover for the breach. It was held that Lowry, and not his assignee, should have been made a party defendant with Kellogg. This is wholly unlike the case at bar. Here the plaintiff corporation by assignment took over the entire business of the copartnership, both as to assets and liabilities, including all outstanding contracts. The former partners are the real owners of the corporation, the only other stockholder being a clerk in their employ. As a legal entity, the corporation stepped into the shoes of the copartnership, but the course of business between the parties was uninterrupted. We do not find it necessary to consider whether in the circumstances the plaintiff would be estopped, for the Practice Act, by virtue of which the plaintiff would be enabled to prosecute the claim as assignee in its own

name, carries the provision that the authority thus conferred shall not affect the defences which the debtor might have made if the action had been brought by the assignor. G. L. 1800. This amounts to a provision that in a suit by an assignee all defences shall be available that the defendant would have if sued by the assignor. Clearly, the statute embraces all defences growing out of the transaction, and would include such a claim as the defendant here relies upon in offset. The same principle applies as in a suit on an overdue note in the name of the transferee, as to which see *Armstrong* v. *Noble*, 55 Vt. 428; *Haley* v. *Congdon*, 56 Vt. 65.

[2] The defendant contends that there was no specific finding that it broke the contract. However, that such is the necessary inference from the facts found is not denied—in fact is inferentially admitted. The position taken is that refusal to pay for the paper delivered under the contract, such refusal not evincing a purpose on its part to renounce the contract, did not entitle the plaintiff to rescind it. This brings us to the principal question in the case, which is whether the defendant's failure to pay as the installments came due was such a breach of the contract as justified the plaintiff's refusal to make further deliveries. This depends upon the character of the contract, whether entire or severable, and the nature of the defendant's breach, whether it did or did not go to the essence of the contract. It is not every breach of a contract that defeats recovery or relieves the other party from performance, but only such as is of the essence of the contract. So it is that failure of either party to perform an essential term of a contract in character entire gives the other party the right to rescind. Assuming that the contract in question was entire, if the time of payment was not of its essence, the breach, which was compensable in damages, would not defeat the defendant's recovery; but, if otherwise, it would operate as a discharge, and justify the plaintiff in treating the contract as ended. *Rioux* v. *Ryegate Brick Co.*, 72 Vt. 148, 155, 47 Atl. 406; *Thompson-Starrett Co.* v. *Ellis Granite Co.*, 86 Vt. 282, 289, 84 Atl. 1017; *Tichnor Bros.* v. *Evans*, 92 Vt. 278, 102 Atl. 1031, L. R. A. 1918 C, 1025.

[3] The fact that goods are to paid for in installments, while making the contract apportionable as to payments, does not necessarily make it severable, rather than entire, for other purposes. A contract may be single in some of its aspects and

divisible or apportionable in others, particularly with reference to remedies for its breach. Ordinarily, if it is a severable contract in other aspects, the failure of the buyer to pay for one installment does not entitle the seller to breach another severable part of the contract. But the fact that the contract is divisible or apportionable as to payments does not prevent its being single so that the default of the purchaser in making payments will release the seller from the balance of the contract at his election. In short, a contract to deliver goods in installments to be paid for in installments may be entire in its general features, and yet as to time of delivery and payment it may partake of a severable character. Note, 2 A. L. R. 665-668, where the cases are collected.

[4] The general rule deducible from the cases and supported by the undoubted weight of authority in this country is that in a contract for the sale of commodities to be delivered in installments and the price to be paid in corresponding installments, either upon delivery or at fixed periods, default of the purchaser in payment of any installment of the price, not justified by the circumstances nor waived by the seller, justifies the latter in rescinding the unexecuted portion of the contract and refusing to make further deliveries. 1 Black on Resc. & Can. § 215; 24 R. C. L. 279. In such cases, having reference to the natural and evident intention of the parties, time of payment is deemed to be an essential element of the contract. Many of the decisions following this rule in other jurisdictions will be found in notes to the works just cited, and in 2 A. L. R. 669; Ann. Cas. 1913 D, 1021. Among the later cases are *Purcell Co.* v. *Sage,* 200 Ill. 342, 65 N. E. 723; *Ohio Valley Buggy Co.* v. *Anderson Forging Co.,* 168 Ind. 593, 81 N. E. 574, 11 Ann. Cas. 1045; *Dudley* v. *Wye,* 230 Mass. 350, 119 N. E. 790; *Samuels* v. *Miner Choc. Co.* (Mass.) 126 N. E. 771; *Enterprise Mfg. Co.* v. *Oppenheim,* 114 Md. 368, 79 Atl. 1007, 38 L. R. A. (N. S.) 548; *Wolfert* v. *Caledonia Springs Ice Co.,* 195 N. Y. 118, 88 N. E. 24, 21 L. R. A. (N. S.) 864; *Strother* v. *McMullen Lum. Co.,* 200 Mo. 647, 98 S. W. 34; *Henderson Lum. Co.* v. *Stillwell & Co.,* 130 Mich. 124, 89 N. W. 718; *Ambler* v. *Sinaiks,* 168 Wis. 286, 170 N. W. 270; *Southern Coal & Coke Co.* v. *Bowling Green Coal Co.,* 161 Ky. 477, 170 S. W. 1185; *California Sugar, etc., Agency* v. *Penoyer,* 167 Cal. 274, 139 Pac. 671. The rule finds support in our own decisions. *Fletcher* v. *Cole,* 23 Vt. 114;

*Preble* v. *Bottom,* 27 Vt. 249; *Amsden* v. *Atwood,* 68 Vt. 322, 35 Atl. 311; *Emack* v. *Hughes,* 74 Vt. 382, 52 Atl. 1061. The latter case is perhaps the most in point. The plaintiff sued for damages for breach of a contract to deliver a certain quantity of slate each month on orders to be sent to the defendant. He had agreed to send his notes about the 15th of each month to cover shipments of the succeeding month. The plaintiff failed to send the notes on the 15th of a certain month, and one week later the defendant notified him that for that reason the contract was at an end. The question was as to which party broke the contract. The plaintiff insisted that the defendant was in no position to complain, having failed to ship slate to cover notes already up, a claim which his evidence tended to support. The trial court instructed the jury that it was not what the parties had demanded of each other that was to determine who broke the contract, but which one first failed to do what he was bound to do; that the defendant's notice that the contract was at an end constituted a breach unless the plaintiff was already in default by reason of his failure to advance his notes; and that whether that constituted a breach depended on whether the defendant had shipped enough slate to cover the previous advancements, or had been excused therefrom by waiver of the plaintiff. On review, the charge in this respect was upheld.

[5, 6] The defendant claims that its refusal to pay the overdue installments, coupled as it was with an offer to pay when promised deliveries were made, did not entitle the plaintiff to rescind the contract, as such a refusal would not indicate a purpose on its part to renounce the contract. This claim is not without support. While the earlier English decisions were in accord with the rule generally adopted in this country, the later cases, notably *Mersey Steel, etc., Co.* v. *Naylor,* 92 B. Div. 648, 9 App. Cas. 434, much relied upon by the defendant, have adopted the rule for which it contends. This so-called later English rule has been followed by some of the courts in this country, while in states that have adopted the Uniform Sales Act it is effective by statute. See 24 R. C. L. 277 *et seq.* Whatever can be said in favor of this rule, it is undoubtedly a departure from the common law; and, being a rule of contract, a change from the common law, if desirable, must be by statute. 15 C. J. 947, § 342.

The defendant relies upon *Booth* v. *Tyson*, 15 Vt. 515, *Davenport* v. *Hubbard*, 46 Vt. 200, 14 A. R. 620, and *McGowan* v. *Griffin*, 69 Vt. 168, 37 Atl. 298.  However, these cases do not support its claim, and are not in conflict with the general rule stated above.  In each the question was whether partial non-performance on the part of the plaintiff would wholly defeat his recovery.  It was held that, although the contract was in one sense entire, yet, if it did not contain a condition of full performance precedent to any right to claim pay, and was of a nature capable of just apportionment, the promises would be considered independent and apportionable, and a recovery for part performance could be had, subject to the deduction of whatever damages the other party entitled to claim full performance may have sustained.  The rule of these cases applies when a party, though himself in fault, is suing to recover compensation for services rendered under a contract when his adversary is in a position to claim full performance.  It does not apply when, as here, a party is seeking to recover damages for the nonperformance of a contract which, through his own fault, he is not entitled to have performed.

Under the contract now being considered, and in the circumstances disclosed by the findings, the defendant had no right to withhold payment to force further deliveries.  *Ginz* v. *Axelrod*, 235 Mass. 143, 126 N. E. 359; *Jensen* v. *Goss*, 39 Cal. App. 427, 179 Pac. 225; *Armsby Co.* v. *Gray's Harbor Com. Co.*, 62 Or. 173, 123 Pac. 32; *Harris Lum. Co.* v. *Wheeler Lum. Co.*, 88 Ark. 491, 115 S. W. 168.  On the other hand, the defendant's failure to pay on demand, the payments being overdue, gave the plaintiff the right to insist that they should be made as a condition precedent to further deliveries.  *National Contracting Co.* v. *Vulcanite Portland Cement Co.*, 192 Mass. 247, 78 N. E. 414. This being so, the plaintiff was not in default, and its refusal to perform further was not a breach of the contract entitling the defendant to damages.  The trial court did not err in disallowing the defendant's claim in offset under the September contract.

The claim in offset for the breach of the December order presents additional and in part entirely different questions. The findings state that all the evidence as to the making of the contract is to be found in the correspondence between the parties which is referred to and made part of the findings.  The letters

relating to this matter are many in number, and cover a period from November 17, 1915, until some time after May 1, 1916. It is not expedient, nor necessary, to quote from the correspondence in detail. It is sufficient for present purposes to say that the order now under consideration was placed with the plaintiff's assignors at their suggestion. In answer to the defendant's request for quotations, they wrote under date of December 17, 1915: "Regarding a new order would say that if you will wire an immediate acceptance we believe we can get our mill to take an order for 10 tons of Glassine, basis 24x36—25 lb., X White Transparo, like sample enclosed. * * * We wish you to understand that we would only take this order subject to our mill taking the same. 11¾c. f. o. b. Phila. 2% 10. Wire us at once what disposition you wish to make." So far as now material the order of December 20, 1915, was as follows: "Referring to your letter of the 17th you may enter our order for ten tons of the X' White Transparo Glassine, as per your sample. * * * at price of 11¾c. per lb., f. o. b. mill with Philadelphia less than carload rate of freight allowed. Terms 2% cash 10 days. Deliveries to be taken as we may specify during the year 1916." Negotiations for the modification of the order followed, first, by changing the quantity to five tons and finally by specifying 2½ tons in rolls 22½ inches wide and a like amount in rolls either 16 or 48 inches wide. The letters from plaintiff's assignors to the defendant contain no express acceptance of the order or its modifications, though such is the fair inference to be drawn therefrom.

[7-9] The plaintiff contends that the December order did not ripen into a contract, since it was not accepted by the copartnership. The court found, in so far as it was a matter of fact, that the plaintiff's assignors accepted the order of December 20 as modified by the correspondence, and that the parties had a right to and did understand that a contract existed between them for the sale and delivery of five tons of Glassine paper according to the modified specifications. It is insisted that the finding of an acceptance as a matter of fact should be disregarded, the claim being that, as the negotiations respecting this order were wholly in the correspondence between the parties, the question of acceptance is a matter of construction and not a question of fact. The acceptance of a proposal need not be express to ripen into a contract, but may be communicated by

conduct. *Porter* v. *Evert's Est.*, 81 Vt. 517, 71 Atl. 722. In the absence of an express acceptance, the understanding of the parties is to be implied from the correspondence and the conduct of the plaintiff's assignors as evidenced thereby; hence it is not a pure question of law to be determined from a construction of the letters, but was a mixed question of law and fact. *Plimpton* v. *Gleason*, 57 Vt. 604. We are therefore bound to give force to the finding as to acceptance. Indeed we do not see how the court could have well reached any other conclusion when the whole correspondence is considered.

[10]   As with the September order, so here, the plaintiff relies upon the claim that the disallowance should be sustained because the defendant's claim in offset is not maintainable against it as assignee of the copartnership. However, it is in error when it says that the court found that all the negotiations were had with the copartnership and not with the plaintiff. All that is said in this regard is by way of a correction in supplemental findings, which is in effect that where any act is found or referred to as being done by or with the plaintiff before March, 1916, the findings should read "with the plaintiff's assignors." If the provision of the Practice Act already referred to does not apply, the findings, including the correspondence, clearly show that before the alleged breach the plaintiff had become individually obligated to the defendant. It took over all of the contracts of the copartnership by the assignment sometime in March, 1916; and in letters written after March 31, 1916, the date most favorable to the plaintiff, it promised performance of the contract in question. Its liability for a breach, then, was not as assignee, but was direct and personal.

[11]   The plaintiff suggests as a ground for affirming the judgment that there was a variance between the declaration in offset and the proof. The whole evidence is not before us and we have only to say whether on the findings, which are not excepted to, the court erred in disallowing this particular claim in offset; in other words, whether the findings support the appropriate count of the declaration. Questions of variance cannot be heard in this Court when it does not appear from the exceptions that the question was raised and passed upon in the court below, nor that such variance is material and substantial, affecting the right of the matter. G. L. 2263. The inhibition

of the statute applies as well where the point is made to sustain the judgment below as where relied upon to secure a reversal. See *Brown's Exr.* v. *Dunn's Est.*, 75 Vt. 264, 55 Atl. 364.

The further claim that there were no findings on which the court could have assessed the damages declared for does not avail to sustain the judgment. In one count the defendant alleged as to the matter of damages in substance that at a time prior to the alleged breach the price of the paper called for by the contract had advanced to thirty cents per pound, and had subsequently gone even higher; that because of the plaintiff's failure to deliver the paper as called for under the contract the defendant had been deprived of the opportunity to sell such paper in the ordinary course of its business at the prevailing market price, and therefore had been deprived of the profits which it ought to and would have made from the sale thereof. The court states in the findings that it did not appear in evidence that the defendant purchased paper in the open market of the kind specified in the order to supply its customers, nor that it was obliged to and did pay an advanced price because of the failure of the plaintiff to fill either of the orders; that it did not appear in evidence that by reason of the plaintiff's failure to deliver Glassine paper under either of said orders the defendant was unable to fill orders of customers for such paper, and thereby deprived of any profit; that it appeared in evidence that there was a difference in price between paper in stock and that sold to be manufactured for future delivery; and that no evidence was introduced showing the different prices of stock Glassine paper subsequent to May 1, 1916.

[12, 13]   The rule is that a party is entitled to recover the loss of profits occasioned by the wrongful termination of a contract that he would have received by its performance; and it has been held that such damages are the direct and immediate consequence of the breach. *Morey* v. *King*, 49 Vt. 304; *Gibson* v. *Wheldon*, 82 Vt. 175, 72 Atl. 909. Such is the rule of damages applied in the cases cited by the plaintiff. *Austin* v. *Langlois*, 83 Vt. 104, 74 Atl. 489. Manifestly, the findings support the allegations as to damages to the extent at least that they are called in question. No paper was delivered under the December order. May 1, 1916, the plaintiff positively refused to ship any more paper until the overdue invoices were paid, claiming that the defendant had broken the contract by failing to meet its pay-

ments. The court computed the defendant's damages as of May 1, 1916, on the basis of the fair market value of the paper called for in the order, and found that if the defendant was entitled to recover for breach of contract as to this order it would be entitled to recover $1,325 with interest from that date. This result was reached by taking the difference between the contract price and the advanced market price of the paper as of May 1. Applied to the case in hand, this was the proper measure of damages, if the breach gave the defendant the right to consider the contract as terminated. Upon such a breach, a right of action would accrue to the defendant and it could have but one recovery. Damages could be recovered for the nonperformance of the whole contract, the measure of which would be the value of the contract to the defendant at the time of. the breach. *Parker* v. *McKannon Bros. & Co.,* 76 Vt. 96, 56 Atl. 536. See also *Emack* v. *Hughes,* 74 Vt. 382, 390, 52 Atl. 1061; 24 R. C. L. 69.

[14] So far we have considered the various reasons advanced by the plaintiff why the judgment should be affirmed independent of the question whether its refusal to make deliveries under the December order was a breach of the contract. In disallowing this claim for damages the court evidently adopted the plaintiff's view, either that there was but one contract embracing the two orders, or that the plaintiff was released from both contracts by the defendant's refusal to make payments on account of the September order, unless paper ready for shipment, including some covered by the December order, was delivered. As to the former, it is claimed that the correspondence shows the two orders to have been but one contract; but there is no fair basis for such a claim. On the contrary, the correspondence shows unmistakably that the two orders constituted separate and independent contracts. The letters evidencing the contracts admit of no other construction. Being so, each, in respect of performance, stood alone, and must be performed irrespective of the conduct of the parties in regard to the other. *Bowers Granite Co.* v. *Farrell & Co.,* 66 Vt. 314, 29 Atl. 491. The defendant could not withhold payment on account of the September order because of the plaintiff's neglect to perform under the December order. No more could the plaintiff justify a refusal to perform the latter contract because of the defendant's breach of the former. The defendant's breach, which terminated the

first contract, did not extend to the other. It insisted to the last upon deliveries thereunder, coupled with a promise to pay if further deliveries were made. *Bowers Granite Co.* v. *Farrell & Co., supra,* is full authority for holding that the plaintiff would be answerable in damages to the defendant for a breach of the December contract.

[15]   It is claimed that the refusal to deliver was conditioned upon payment by the defendant, and that it does not appear that the defendant subsequently demanded a delivery. As we have seen, the condition, so far as it related to deliveries under the December contract, was without right, and put the plaintiff in default. The contract was entire though it contemplated deliveries by installments. The wrongful refusal to deliver any installment—here the first—would be a breach of the whole contract, and entitle the defendant to repudiate the whole and recover damages for the breach. The provision for delivery would not split up the contract into as many contracts as there were to be deliveries; but the defendant would have the same right to rescind the whole contract for refusal to deliver a single installment that it would have had if the agreement had been to deliver all of the paper at once. *Norrington* v. *Wright,* 115 U. S. 188, 29 L. ed. 366, 6 Sup. Ct. 12; *Cleveland Rolling Mills* v. *Rhodes,* 121 U. S. 255, 30 L. ed. 920, 7 Sup. Ct. 882; *Roach* v. *Lane,* 226 Mass. 598, 116 N. E. 470; *Wolfert* v. *Caledonia Springs Ice Co.,* 195 N. Y. 118, 88 N. E. 24, 21 L. R. A. (N. S.) 864; *Seibert* v. *Dunn,* 216 N. Y. 237, 110 N. E. 447; *White* v. *Wolfe,* 185 Pa. 369, 39 Atl. 1011; *Hoare* v. *Rennie,* 5 H. & N. 19, 157 Eng. Reprint, 1083; *Houck* v. *Miller,* L. R. 70 B. Div. 92; 24 R. C. L. 282.

We hold that the trial court erred in disallowing the defendant's claim in offset on account of the December contract. The defendant is entitled on the findings to recover $1,325, with interest from May 1, 1916, aggregating $1,682.75. The plaintiff had judgment below for $570.71, which included interest to February 18, 1920, and so there would be due it as of this date $595.44, to be set off against the sum due the defendant, leaving in arrear from the plaintiff $1,087.31, for which the defendant should have judgment.

*Judgment reversed, and judgment for the defendant for $1,087.31, with costs in the court below. Let neither party take costs in this Court.*