HARRIET E. GIBSON *v.* BENJAMIN F. WHELDON.

Appointed Special Term at Brattleboro, February 16, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.
Opinion filed May 19, 1909.

*Contracts—Action for Breach—Measure of Damages—Loss of Property—Pleading—Variance—Opinion Evidence—Competency.*

Where a declaration for breach of a contract for the hauling by plaintiff of wood for defendant alleged defendant's absolute refusal to let plaintiff perform at any time or in any manner, it need not set out the provisions of the contract as to when and how the hauling should be done.

In an action for breach of a written contract, the objection, on a claimed variance, that "the details, as stated, vary, as shown on the face of it," designates nothing, and will not be considered where a comparison of the declaration with the contract discloses no such variance as is "material and substantial, affecting the right of the matter."

Where defendant employed plaintiff to haul specified wood at a designated price per cord, plaintiff was entitled to treat a letter to her from defendant, stating that he had employed a third person to haul part of the wood, as a breach of the contract by defendant, and need not act on the suggestion in the letter that she help the third person, and was herself entitled to haul only some of the wood.

Where a contract is wrongfully terminated, the injured party is entitled to recover as damages the profits that he would have received by the performance of the contract.

In an action for breach of a contract for the hauling by plaintiff of certain wood for defendant, plaintiff was properly allowed to testify as to what it would have cost her to haul the wood, she having previously testified that she had for about 40 years lived on the farm from which the wood was to be drawn, and for the last 17 years had herself managed the farm, and was familiar with the process and cost of drawing wood from that vicinity.

ASSUMPSIT. Plea, the general issue. Trial by jury at the June Term, 1908, Windsor County, *Taylor,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Thomas W. Moloney* for the defendant.

*William W. Stickney, John G. Sargent* and *Homer L. Skeels* for the plaintiff.

It is not necessary to state all the parts of a contract unless the omitted parts are essential. The gravamen is that a certain act which the defendant engaged to do has not been done. *Allen* v. *Lyman,* 27 Vt. 20; *Coolidge* v. *Ins. Co.,* 67 Vt. 14; 1 Greenleaf, §66; *Ammel* v. *Noonar,* 50 Vt. 402; *Allen* v. *Goff,* 13 Vt. 148; *Lent* v. *Padelford,* 10 Mass. 230.

Defendant's act in hiring a third person to draw the wood was a breach of the contract which entitled plaintiff at once to bring suit. 2 Chitty on Contracts, 1067; 1 Addison on Contracts, 326; *Fletcher* v. *Cole,* 23 Vt. 114; *Rankin* v. *Darnell,* 52 Am. Dec. 557; *White* v. *Lumiere No. Am. Co.,* 79 Vt. 206; *Morgan* v. *Tucker,* 78 Vt. 56; *Marshall* v. *Craig,* 4 Am. Dec. 647.

The measure of plaintiff's damages was correctly indicated by the charge of the court. *Chamberlin* v. *Sawyer,* 33 Vt. 80; *Stanton* v. *R. R.,* 21 Am. St. Rep. 110; *Trigg* v. *Clay,* 29 Am. St. Rep. 723.

HASELTON, J. This is an action of assumpsit. The common counts and a special count were joined. The trial was by jury. A verdict for the plaintiff was returned and judgment was rendered thereon.

The special count alleged a contract between the plaintiff and the defendant by which the defendant was to furnish the plaintiff, upon her land in Shrewsbury, four hundred cords of pulp wood to be drawn by her to the railroad station at Mount Holly, and to be delivered by her on board the cars there. .This count alleged that for such drawing and delivery the defendant was to pay the plaintiff $1.50 per cord. The count further alleged readiness at all times on the part of the plaintiff to perform and fulfill, under the contract, and

the refusal of the defendant to permit her so to do. The plaintiff in her declaration claims as damages the profits which she would have derived from the performance of the contract had she been permitted to perform.

The contract relied upon by the plaintiff was contained in a deed given by her to the defendant, and accepted by him, conveying to him the pulp wood standing on the land referred to. This deed was received in evidence, under objection and exception on the ground of variance. The variance pointed out is in this clause of the deed: ''This deed is given and accepted with the further agreement, that said grantor is to be allowed to haul said pulp wood to the railway, and there deliver on board cars at a rate of $1.50 per cord for such hauling and delivery, if same is done at times and in amounts satisfactory to grantee.''

But the declaration alleges that the defendant would not permit the plaintiff to perform, and that the defendant had the pulp wood drawn by another; and so the clause just quoted, and any reference to it, were properly omitted from the declaration in this action. The clause of the deed above quoted relates only to the time and manner of drawing. It did not give the defendant the right to refuse to let the plaintiff draw the wood at all, for the contract, as appears by the deed, fixed a time within which the wood was to be cut and drawn, and gave the plaintiff the right to do the drawing. By alleging, in effect, the absolute refusal of the defendant to let her perform at any time or in any manner, the plaintiff relieved herself from the necessity of setting out the provisions of the contract as to when and how the drawing should be done. *Allen* v. *Lyman*, 27 Vt. 20; *Allen* v. *Goff*, 13 Vt. 148; *Tempest* v. *Rawling*, 13 East. 18.

Were the plaintiff suing to recover the contract price for the drawing of the wood it might be necessary for her to allege not only that she had drawn it but that she had drawn it at times and in amounts satisfactory to the grantee. For the drawing at such times and in such amounts might be a condition precedent to her right to exact payment of the contract price from the defendant. In that view it would be a part of the consideration moving from her and so in such case would need to be alleged. However, the distinction between such supposed case and the case at bar is sufficiently clear.

No claimed variance other than that already treated of was pointed out in the county court but it was there further objected

12

that: "the details, as stated, vary, as shown on the face of it."
This objection designated nothing, and since a comparison of
the declaration with the contract discloses no such variance as
is "material and substantial, affecting the right of the matter,"
no consideration is nor can be given to this general objection.
P. S. 1986; *Dano* v. *Sessions,* 65 Vt. 79, 26 Atl. 585; *Holdridge*
v. *Holdridge's Estate,* 53 Vt. 546; *Morey* v. *King,* 49 Vt. 304;
*Hills* v. *Marlboro,* 40 Vt. 648.

The plaintiff's evidence tended to show that from time to
time she asked the defendant to let her begin drawing the wood,
and that he put her off on the ground that he was not ready
and had no cars ready. Her evidence further tended to show
that she owned a good team for the work and that she had
arranged with a neighbor, who had several teams, for assistance
in the work to any extent required. On August 11, 1903, after
the contract, which was made in April, 1903, the defendant
wrote the plaintiff the following letter: "I expect William Wil-
kins will begin to draw the wood next week. I hope you will
do all you can to help it along as I paid you one hundred dollars
more than anyone else offered you. I pay him $1.25 and please
not tell him that I agreed to give you $1.50. I told him you
had a right to draw some of it and I don't think you will
have any trouble about it. I think he don't expect to draw
only on wheels with two teams." The clause as to the one
hundred dollars had reference merely to the price paid for
the pulp wood.

The plaintiff's evidence tended to show that on the day
when this letter was written, but after it was written, she
saw the defendant about the drawing of the wood, and that
the defendant then told her what he had written and that she
told him that "she was ready and anxious to perform her
contract and draw the wood" and that she then "objected to
his letting any one else do the work or any part of it." On
August 15 the plaintiff wrote the defendant as follows: "Your
letter of Aug. 11th, has not yet arrived, but will here say I am
ready to draw the pulp wood and will draw all of it. Mr.
Wheldon, I do really object to your putting in other teams to
draw. Why not let me draw it all as we talked?" In a post-
script she says that since writing the body of the letter she has
received the defendant's letter above referred to. She explains
the delay in its transmission by saying that it had been through

different post-offices. Shortly after the correspondence, Wilkins, under the defendant's direction, commenced the drawing. He continued hauling until all the wood that was cut was drawn. The plaintiff drew none of the wood.

The defendant claimed and his evidence tended to show that he was by contract bound to deliver a large quantity of the pulp wood at the railroad station in the months of July and August, 1903, that he thought the plaintiff's one farm team could not draw the pulp wood as required, and that the plaintiff alone could not handle the required quantity of wood within the requisite time. The defendant further claimed "that he did not in any manner hinder or prevent plaintiff from drawing so much of the wood as she chose to draw." Such being the claims of the parties and the tendency of the evidence the defendant requested the court to charge the jury as follows: "That, upon the reception of defendant's letter of August 11th, it was the duty of the plaintiff to proceed, with reasonable dispatch, to draw the wood, if she desired to avail herself of the claim sought to be recovered in this suit, and her failure so to do amounts to a waiver of that part of the contract." The defendant also requested the court to give the jury the following instruction: "The undisputed evidence shows that defendant in his contract with Wilkins, made provision for allowing plaintiff to draw so much as she might see fit to draw; due notice of this fact was given the plaintiff by the defendant's letter of August 11. Regardless of the condition in the contract, the plaintiff did not have the legal right to omit, entirely, to do the work and then claim damages for the entire lot. In any possible view of the contract, she was bound to proceed, with reasonable dispatch, to the execution of the work, and her failure to do so was a breach of the contract." Both requests were refused and rightly.

The plaintiff was within her rights in treating the defendant's letter of August 11 as a breach of the contract on his part, and she was under no obligation to act on the suggestion of the letter that she do what she could to help Wilkins along, nor to give countenance to the suggestion in the letter that the extent of her right under the contract, was "to draw some of it." *Emack* v. *Hughes,* 74 Vt. 382, 52 Atl. 1061.

Besides, the first clause of the second request above set out assumed as a fact established by undisputed evidence that

the defendant in his contract with Wilkins made provision by which the plaintiff might draw so much of the wood as she saw fit, when in fact what appeared in evidence in this regard was, as the exceptions state, that the defendant simply arranged with Wilkins to permit the plaintiff to draw so much of the wood as she desired "while Wilkins was drawing."

On the subject of damages the court instructed the jury that if the plaintiff was entitled to recover, her damages would be the difference between the contract price for drawing the wood and what it would have cost her to perform the contract. The court added that her damages would be her loss of profit. The defendant excepted to this portion of the charge, but the rule applied by the court was correct. If the plaintiff could recover at all she could recover as damages the profit which she would have derived from the performance of the contract. In a case already cited in this opinion this Court said: "The rule, that a party is entitled to recover the loss, occasioned by the wrongful termination of a contract, of profits that he would have received by the performance of the contract, is too well established to require the citation of authorities to support it." *Morey* v. *King*, 49 Vt. 304.

On the question of the plaintiff's damages the court referred the jury to all the evidence on the part of the plaintiff and all the evidence on the part of the defendant bearing upon the matter, and we assume that there was evidence relating to whatever affected the question of cost and profit. This is said because of an argument in this regard which is based on no exception.

It is claimed on defendant's brief that the rule applied by the court permitted the recovery of a double profit, and in explanation of this claim it was said, in oral argument, that a fair profit is, in a proper sense, a part of the cost. But counsel evidently had in mind a principle which has no application here.

During the coming in of the evidence the plaintiff herself was allowed to testify as to what it would have cost her to draw the wood, and the defendant excepted to the reception of her testimony on that point. But the plaintiff's evidence tended to show that she had lived on the farm from which the wood was to be drawn for about forty years, that for the last seventeen years she had been a widow and had herself

managed the farm, that she was familiar with the process of drawing wood from that vicinity to the railroad station and with the prices for such drawing. In receiving her testimony the court tacitly, at least, found that she was qualified to testify on the point in question; and in the admission of such evidence there was no error.

*The exceptions taken on trial have all been considered and the result is that the judgment of the county court is affirmed.*