CHASE NATIONAL BANK *v.* T. J. HEALY.

May Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed October 6, 1931.

*Ruebin Levin* and *Orrin B. Hughes* for the defendant.

*Collins M. Graves* and *Leonard F. Wing* for the plaintiff.

MOULTON, J.    This is an action upon a promissory note, a renewal of one of like amount, signed by the defendant and payable to the order of the Manchester Manufacturing Company, and indorsed by that company while current to the Equitable Trust Company of New York, as a part of the collateral security for a loan from the Trust Company to it.   The Equitable Trust Company merged with the Chase National Bank, which became the holder of the note subject to the ownership rights of the Trust Company.   At the close of all the evidence the trial court directed a verdict for the plaintiff, and the case is before us on the defendant's exception to this ruling.

The execution of the note and the fact that it is unpaid are conceded. The original note was given in payment for certain shares of stock in the Manchester Manufacturing Company. The defendant claimed, and his evidence tended to show, that it was obtained from him by certain false representations made by two of the officers of the Company, upon which he relied, and that he did not discover the fraud that had been practiced upon him until after he had given the renewal note upon which this action is based.

The note was complete and regular upon its face; the Equitable Trust Company became a holder of it before it was overdue and for value; it had not been previously dishonored; and it is not suggested that at the time it was negotiated the Trust Company had notice of any infirmity in the instrument or defect in the title of the Manchester Manufacturing Company. The defense is that the Equitable Trust Company was not a holder in due course, because it did not take the note in good faith as required by the Uniform Negotiable Instruments Act. G. L. 2921. Since the defendant came forward with evidence sufficient for the jury tending to show fraud in the inception of the note, the burden upon this issue was cast upon the plaintiff, and it devolved upon it to disclose the facts and circumstances attending the tranfer by which it took the instrument from which good or bad faith might be inferred. *Howard National Bank* v. *Wilson,* 96 Vt. 438, 451, 453, 120 Atl. 889; *Harponola Co.* v. *Wilson,* 96 Vt. 427, 436, 120 Atl. 895. "To show knowledge of such facts that the taking would amount to bad faith it is not necessary that the representatives of the bank should know the exact fraud that was practiced upon the defendant, but the defense would be available if the facts within their knowledge tended to show that there was something wrong with the transaction. * * * * To support a verdict for the defendant, there would have to be evidence of circumstances attending the taking of the note, known at the time to the representatives of the bank having to do with the taking, at least sufficient to occasion suspicion of wrong doing. Short of this, certainly there would be no reasonable basis of an inference other than of good faith." *Howard National Bank* v. *Wilson, supra,* 96 Vt. pages 453, 454, 120 Atl. 889, 895.

The loan from the Equitable Trust Company to the Manchester Manufacturing Company was in the sum of $50,000.

The latter company was then recently incorporated and had acquired the plant of the Manchester Lumber Company, at Manchester Depot, Vermont, and was about to start operations. Payment was secured by the deposit of bonds of the Manufacturing Company in the amount of $100,000 and by the transfer of several notes payable to the order of the Company, aggregating $10,000 of which the note given by the defendant was one. In addition the note given by the Manchester Manufacturing Company was also indorsed and guaranteed by four individuals, Messrs. Colvin, Helitzer, Hopes, and Trumbull, all of whom were interested in the company. It has not been paid. The loan was approved by the directors of the Trust Company, a few days after it was made.

The principal negotiator for the loan was Mr. Colvin, president of the Glens Falls Trust Company, of Glens Falls, N. Y., 65 years of age, and an experienced and responsible business man, who had been a substantial and satisfactory customer of the Equitable Trust Company for fifteen to twenty years. Before making the loan the Trust Company made an investigation of the value of the property of the Manufacturing Company and its personnel and business prospects. A report from the company showed real estate values at $75,000 and machinery valued at $80,000, besides cash or other liquid assets. The value of the real estate and machinery was stated by Mr. Colvin at the same figures. An inquiry addressed to Factory Point National Bank of Manchester concerning the value of the plant was answered as follows:

"Hard to say as to its value. Physical condition is first rate and could not be built for $40,000, and perhaps not for that. There is more or less machinery that can be used to advantage by any manufacturing concern. Location is good and local conditions are good and any new concern would receive support."

An estimate of the cost of the overhead expense in manufacturing a given quantity of the product of the company was also obtained, and showed an anticipated profit. The individual indorsers of the note, with the exception of Mr. Colvin, whose responsibility was already known to the bank were called upon for statements of their financial standing. They were made as

follows: Mr. Helitzer $102,700; Mr. Hopes $148,125; and Mr. Trumbull $44,821, although the net worth of the last was apparently considered to be reduced by the fact that the sum of $25,000, which he had included in his statement of assets, was to be paid by him for stock in the Manufacturing Company. Mr. Colvin informed the Trust Company that the makers of the notes assigned as collateral were small business men, but responsible. As to one of them, whose note was for $5,000, the Trust Company was advised from another source that he was believed to be honest, owned a little property, but was of no large financial responsibility and was a fairly good business manager. No further investigation of the signers of these notes was made, but no question is made by the defendant as to the responsibility of any of them except the one mentioned. The Trust Company understood that all of these notes were given as subscriptions to the stock or bonds of the Manufacturing Company.

All this appeared without contradiction from the exhibits in the case and from the testimony of Mr. Robert Kerr, who, at the time of the loan, was in charge of the collateral loan department of the Equitable Trust Company. All of the files of the Trust Company bearing upon the transaction were produced and marked as exhibits.

The defendant argues that the discrepancy between the estimate of value of the plant and its replacement cost given in the report of the Manufacturing Company, and by Mr. Colvin, and that given by the Factory Point National Bank is evidence tending to show a lack of good faith, but we do not so regard it. The discrepancy is not so apparent as he claims. The former estimate included the buildings and sprinkling system and land; the latter referred to the building alone. The machinery mentioned by the Company and Mr. Colvin was stated to be, in part at least, newly purchased; that mentioned by the bank was plainly only such as had been in the building when used by the Manchester Lumber Company, from whom the Manufacturing Company bought it.

Neither is there merit in the claim that the report that one of the signers of the collateral notes was of no large financial responsibility tended to show that there was something wrong with the transaction. Under the circumstances this fact afforded no basis for an inference of bad faith.

It is also insisted that the Trust Company did not sufficiently investigate Mr. Trumbull, because one of its correspondents to whom it applied for information being unable to give it, indicated a source where it could be obtained, but no further inquiries were made. But an examination of the exhibit upon which this claim is based shows that the correspondent referred the Trust Company elsewhere, not with regard to Mr. Trumbull, but with regard to two other persons, also inquired about, who had no connection with the Manchester Manufacturing Company.

It appeared that, some two weeks after the loan was made, the Trust Company received a report on the Manufacturing Company from R. G. Dunn and Company, which contained certain statements slightly derogatory to the responsibility of Mr. Trumbull. No reflections were made upon any of the other indorsers of the note, and it was said that the personnel of the Company was well regarded. It does not appear when this report was requested by the Trust Company, but the defendant assumes that this was done before the loan was made, and argues that the fact that it did not wait until it was received before crediting the money to the Manufacturing Company's account was evidence tending to show negligence, because the report disclosed that the loan was a risky proposition. No such claim was made on trial below, and, indeed, the report does not justify the strictures made upon it. It amounts to a statement that, since certain details were lacking, no estimate of responsibility could be advanced, and that the company had not been in operation long enough to have established any definite credit standing. From the other exhibits in the case, it is apparent that information as to the details referred to was already in the possession of the Trust Company before the loan was made. What was said with regard to Mr. Trumbull's responsibility, if it had been known at that time, would have had no tendency to occasion suspicion that there was anything wrong about the defendant's note.

██ Finally, the defendant argues that the plaintiff did not disclose all the circumstances surrounding the transaction, because it did not call as witnesses two other officials of the Equitable Trust Company who had to do with the negotiations and investigation of the loan. As to this, it is sufficient to say that the transcript does not disclose that this point was made below,

and therefore it is not available here. While a party who makes a motion for a verdict is required to specify the grounds upon which it is predicated, it is equally necessary for the other party to specify the grounds of his opposition to it. Each is bound to assist the trial court to an adequate understanding of the situation to the end that a ruling can be understandingly made. *Grapes* v. *Willoughby*, 95 Vt. 458, 460, 461, 108 Atl. 421.

The conclusion is that the evidence disclosed nothing that would lead a reasonable man to think that the note was taken otherwise than in good faith.

*Judgment affirmed.*