S. A. BREDING *v.* CHAMPLAIN MARINE & REALTY COMPANY, INC.

January Term, 1934.

Present: SLACK, MOULTON, THOMPSON, and GRAHAM, JJ., and Sturtevant, Supr. J.

Opinion filed May 1, 1934.

*A. Pearley Feen* and *Willsie E. Brisbin* for the plaintiff.

*J. Boone Wilson* and *Chas. F. Black* for the defendant.

STURTEVANT, Supr. J.  This is an action of contract.  The declaration contains two special counts and the common counts in assumpsit.  Defendant answered with a general denial and four special answers and a plea in set-off.  Trial by jury.  At the close of all the evidence the defendant moved that the court direct a verdict for the plaintiff in the sum of $407.85.  Motion granted and plaintiff excepted.  Judgment for plaintiff in the sum of $407.85.  The case is here on plaintiff's exceptions.

At all times material herein, the defendant was ·a "distributor" of Chris-Craft boats.  These boats were built by the Chris-Craft Corporation at their factory at Algonac, Michigan.  Defendant's contract with the Chris-Craft Corporation gave to the defendant the right to sell Chris-Craft boats in the State of Vermont, excepting Windham County, and the additional privilege of selling on the New York side of Lake Champlain.

On or about February 10, 1932, plaintiff and defendant entered into a written contract for the purchase by plaintiff from defendant of "one Model 307 custom built 25-foot Chris-Craft runabout," at the price of $3,250, one canvas mooring cover at $50, and one cockpit cover at $8.50.  The contract also provided that plaintiff should pay the additional sum of $25 for lettering and $150 to cover "freight and handling from Algonac, Michigan."  The total contract price was $3,483.50.  Delivery of the

new boat and equipment was to be made f. o. b. Burlington, Vermont, on or about July 11, 1932. At the time this contract was executed plaintiff turned over to defendant a Chris-Craft boat known as the "Dolly B," at an agreed price of $1,500 to apply on the purchase price of the new boat and equipment. Plaintiff had purchased the Dolly B from defendant in 1931.

On or about April 12, 1932, the plaintiff notified the defendant that he cancelled the contract. Defendant immediately took steps to cancel its order for this boat which it had placed with the Chris-Craft Corporation. This was accomplished without cost to the defendant. On April 29, 1932, defendant notified plaintiff that the cancellation of his (plaintiff's) contract could not be accepted and that defendant would endeavor to keep to a minimum the damages resulting from plaintiff's failure to accept the boat as agreed, and that in accounting to plaintiff the defendant would deduct its damage from the turn in price of the Dolly B. The difference between the contract price to plaintiff of the new boat and the canvas covers and what defendant was to pay the Chris-Craft Corporation for same was $893.75 and $17.55, respectively. It was also agreed at the trial that the plaintiff owed the defendant on other matters the sum of $201.19. The defendant claimed that it was entitled to have these items, totalling $1,112.49, deducted from the price at which it had accepted the Dolly B, namely, $1,500, leaving a balance of $387.50, plus interest agreed upon in the sum of $20.34, making total amount due to plaintiff $407.85. The plaintiff seeks to recover the turn in price of the Dolly B less a commission he is willing to allow to the defendant for sale of the same.

At the close of all the evidence, upon motion of the defendant, the Court directed a verdict for the plaintiff in the sum of $407.85, and the plaintiff excepted.

The claims which plaintiff presents for our consideration may be briefly stated as follows:

> 1. The measure of damages applicable in this action is the difference between the contract price of the boat to plaintiff and the market price of same at the time of delivery.
> 2. Even if the rule followed by the court below furnished the correct measure of damages, it could not be applied in this case. because the contract

between the defendant and the manufacturer was not within the contemplation of the parties at the time the contract between them was made.

3. The court below allowed excessive damages in the application of the rule which it adopted.

4. There were three issues which should have been submitted to the jury, viz.: (a) Was there an available market for the boat at the time in question? (b) What·was defendant's net profit under the rule adopted by the court below? (c) Was there a mutual rescission of the contract?

■ No. 4. First we consider whether any or all of the three issues set forth in No. 4 above should have been submitted to the jury. As to the question of mutual rescission of the contract, it is sufficient to say that the transcript does not disclose that this point was made below and therefore it is not available here. Hence we give no further consideration to this question. *Grapes* v. *Willoughby*, 93 Vt. 460, 461, 108 Atl. 421; *Chase National Bank* v. *Healy*, 103 Vt. 495, 500, 501, 156 Atl. 396.

■■ That there was evidence tending to show there was no available market for this new boat at the time material here is not questioned by plaintiff. He contends that there was also evidence to the contrary which latter tended to show there was an available market for it, if not in Burlington, then in Boston or New York. In connection with the testimony of Mr. Wood, plaintiff introduced in evidence a copy of a catalog published by the Chris-Craft Corporation early in 1932. Plaintiff quotes the following excerpts from this catalog:

"Chris-Craft was the first manufacturer to place the design and manufacture of fine motor boats on a standard production basis—and by building in quantity, to sell quality at a low price."

"Models 310 and 311 are built to order. Prices and specifications on application."

"A World-Wide Dealer Organization * Ready to Serve You."

"It is as Easy to Buy a Chris-Craft Out of Income as it is a Refrigerator or an Automobile."

Plaintiff also quotes from the testimony of Mr. Cothran the following question and answer:

"Q. * * * the price for the model 307 custom built 25-foot Chris-Craft runabout boat as specified in the current literature of the Chris-Craft Corporation as of February 10th, 1932, remained the same at $3,250.00 F.O.B. Factory, Algonac, Michigan, from February 10th, 1932, to July 11th, 1932. Is that correct?
"A. That's correct. Yes."

This is all and the only evidence relied upon by plaintiff in support of this issue. He contends that from this it should be inferred that the boat in question was a "stock model" and that because it was a stock model it should be further inferred that the boat had an available market. This is an ingenious argument, but as this Court has before stated, the trouble with it is that no inference can legitimately be based upon a fact the existence of which itself rests upon a prior inference. The only inferences of fact which the law recognizes are immediate inferences from the facts proved. *State* v. *Marini*, 106 Vt. 126, 170 Atl. 110, 118; *Vermont Shade Roller Company* v. *Burlington Traction Co.*, 102 Vt. 489, 499, 150 Atl. 138, and cases cited. There was no issue for the jury here. We omit consideration of the fact that the catalog was not introduced as independent evidence.

■ In passing it is worthy of note that what the market conditions as to this boat were in Boston or New York is not material in this case. The term "available market," as here used, means an existing market for this boat available to this defendant. Any market outside of the territory where defendant had a right to sell was not a market available to it. Its market was limited to the territory where it had a right to sell, namely, Vermont, excepting Windham County, and the New York side of Lake Champlain.

■ Plaintiff contends that the jury should have been allowed to determine the net profits to defendant resulting from the sale in question. However, he points to no conflict or disputed question of fact in the evidence. His question is rather one as to the law applicable to the undisputed facts. There being no disputed question of fact and no conflict in the evidence, there was no issue for the jury. It was for the court to apply the law to the facts and direct a verdict accordingly. This fourth exception is not sustained. *Village of St. Johnsbury* v. *Thompson*, 59 Vt. 300, 311, 90 Atl. 571, 59 A. R. 731; *Mason* v. *Sault*, 93 Vt. 412, 414, 108 Atl. 267, 18 A. L. R. 1426.

■ No. 3. The provisions of the contract material on the . question of damages in case of cancellation are as follows:

> "It is further understood and agreed that no cancellation of this order will be allowed, except for failure to deliver within one month after formal demand for delivery of said equipment by purchaser. In case of cancellation any used equipment, which may have been taken in, as part payment of purchase price and sold by Champlain Marine and Realty Company, Inc., prior to the receipt of such notice of cancellation, shall be accounted for at the price received on such sale, less 25% to take care of selling expenses, and not at the amount for which credit was to be allowed."

The cancellation provided for here is cancellation in case of "failure to deliver within one month after formal demand for delivery of said equipment by purchaser." No other grounds for cancellation are recognized. This provision does not apply to the case before us. The meaning of this contract must be ascertained from the whole instrument so construed as to give meaning and effect to every part of it that is material. *Crosby* v. *Vermont Acc. Ins. Co.*, 84 Vt. 510, 515, 80 Atl. 817; *DeGoosh* v. *Baldwin & Russ*, 85 Vt. 312, 317, 82 Atl. 182; *Kennedy* v. *Clark*, 103 Vt. 349, 353, 154 Atl. 577. The intent of the parties as expressed in that portion of the contract above quoted is clear and free from ambiguity.

■ In claiming that defendant's expenses of advertising and canvassing for prospects must be considered in fixing defendant's loss resulting from plaintiff's breach, the plaintiff confuses expenses incident to defendant's business in general with expenses incident to this sale in particular. Cost of advertising, etc., had to be met regardless of this sale. Such expenses are in a class of what are commonly termed "overhead expenses" and are not for consideration here. Costs of freight and handling were provided for by the $150 item to be paid by plaintiff. Hence the loss to defendant occasioned by plaintiff's breach is the difference between the cost to it and what plaintiff was to pay for the boat and equipment. The argument that defendant's loss here is decreased by an increase of its advertising or other overhead expenses does not appeal to reason. *Morey* v. *King, Fuller & Co.*, 49 Vt. 304, 313; *Danforth & Co.* v. *Walker*, 40 Vt. 257, 259; *Stewart* v. *Hansen*, 62 Utah, 281, 218 Pac. 959, 44 A. L. R. 340; *Torkomian* v. *Russell*, 90 Conn. 481, 97 Atl. 760; *Poppenberg* v. *R. M. Owen Co.*, 221 N. Y. 569, 116 N. E. 1070; 17 C. J. p. 788, article 113. We quite agree that purely speculative damages cannot be awarded. However, from what is above stated, it appears that the amount of these overhead expenses was not for consideration, even if shown. It therefore follows that absence of this evidence renders the determination of defendant's loss neither uncertain nor speculative. This exception is not sustained.

■ ■ No. 2. The undisputed evidence shows that defendant, a dealer, purchased Chris-Craft boats from the manufacturer at a discount from the list price at which he sold them and that in this case the difference between the sale price and cost to defendant represented his profit. From these facts together with the other circumstances hereinbefore mentioned, under which the sale was made, it may be reasonably presumed that this profit was within the intent and mutual understanding of both parties at the time they entered into their contract. Hence this profit was properly considered by the court below in measuring defendant's damages. *Howard* v. *Stillwell & B. Mfg. Co.*, 139 U. S. 199, 206, 35 L. ed. 147, 150, 11 Sup. Ct. 500, 503, and cases cited.

Plaintiff cites several cases in support of his contention that the cost to defendant of this boat and equipment could not be considered in determining the damages here. These are all New York cases with the exception of *United States* v. *Speed*, 8 Wall. 77, 19 L. ed. 449. This question was not considered by the court in that case. The first case cited, which plaintiff states is a leading case on this question in this country, is *Masterson* v. *Mayor, etc., of Brooklyn*, 7 Hill 61, 69, 42 A. D. 42, where, after discussing the question of profits, and when and why profits in many cases are too remote and speculative to constitute a true measure of damages, the court said: ''But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfilment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement.'' Examination of the other cases cited shows that they are not inconsistent with the holding of the court in the New York case of *Poppenberg* v. *R. M. Owen & Co.*, 221 N. Y. 569, 116 N. E. 1070. The latter case is more recent than the other New York cases cited by the plaintiff. In this case the circumstances were as follows: The seller made a contract with the buyer by which the latter was to purchase from the seller a certain number of Reo automobiles at a specified price. The buyer refused to take the number of automobiles as provided in the contract. The court referred to section 64 of the Uniform Sales Law (Laws 1921, No. 171) and applied as the measure of damages the difference between what the seller was to receive for the automobiles and what same ready for delivery would cost him. The law applicable to this question in New York appears to be in harmony with claims made by the defendant rather than to support plaintiff's contention.

The plaintiff in his brief refers to the pleadings and contends that same are insufficient. This question was not raised below and hence we do not consider it. *Capital Garage Co.* v.

*Powell,* 97 Vt. 204, 210, 211, 122 Atl. 423. This second exception is not sustained.

No. 1. Vermont adopted the Uniform Sales Act in 1921. The provisions of this act material here are as follows:

> "Sec. 64. *Action for Damages for Non-acceptance of the Goods.* (1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for non-acceptance.
>
> "(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.
>
> "(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."
>
> "Sec. 74. *Interpretation Shall Give Effect to Purpose of Uniformity.* This act shall be so interpreted and construed, as to effectuate its general purpose to make uniform the laws of those states which enact it."

In this case the evidence that there was no available market for this boat stands uncontradicted. Hence the general rule of damages as set forth in paragraph three of section 64 of the Sales Act does not apply. The cases cited by the plaintiff to the contrary are not in point. In most of them it appears that there was an available market for the article or goods in question, and in others there was no evidence on this point. In none does it affirmatively appear, as here, that there was no available market for the subject of the contract. The measure of damages to be applied here is stated in paragraph two of section 64 of the Sales Act. This paragraph is simply declaratory of principles

of law long recognized and followed in this State. In the case of *Morey* v. *King, Fuller & Co.*, 49 Vt. 304, at page 313, this Court held as follows: ''The rule, that a party is entitled to recover the loss, occasioned by the wrongful termination of a contract, of profits that he would have received by the performance of the contract, is too well established to require the citation of authorities to support it.'' Also see *Gibson* v. *Wheldon*, 82 Vt. 175, 180, 72 Atl. 909; *Danforth & Co.* v. *Walker*, 40 Vt. 257, 260; *Hayden* v. *Hoadley*, 94 Vt. 345, 350, 111 Atl. 343; *Auer & Twitchell* v. *Robertson Paper Co.*, 94 Vt. 473, 484, 111 Atl. 570. Because of the provisions of section 74 of the Uniform Sales Act, cases where the courts of sister states have applied a measure of damages under circumstances similar to the case before us and where it has been found that the general rule provided in paragraph three of this act did not apply have more than ordinary force with us. The very purpose of the act is to make sales laws uniform in those states which have adopted it. The rule followed by the court below in assessing defendant's damages accords with the previous holdings of this Court. *Morey* v. *King, Fuller & Co., supra; Gibson* v. *Wheldon, supra; Danforth & Co.* v. *Walker, supra; Hayden* v. *Hoadley, supra; Auer & Twitchell* v. *Robinson Paper Co., supra.* It is in strict compliance with paragraph two of section 64 of the Uniform Sales Act because it reimburses defendant for its ''loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract,'' and it is in harmony with the decisions of the courts of other states which have had occasion to assess damages under the Uniform Sales Act when the general rule as provided in paragraph three, section 64, was found not to apply. *Stewart* v. *Hansen*, 62 Utah, 281, 218 Pac. 959, 44 A. L. R. 340; *Torkomian* v. *Russell*, 90 Conn. 481, 97 Atl. 760. This exception is not sustained.

This disposes of all the questions presented by plaintiff for our consideration, and no error appears.

*Judgment affirmed.*